IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SAMWEL OKARI ANYIMU,**

      **Petitioner,**

      v.                                  **CASE NO.  16-3232-JWL**

**DEPARTMENT OF HOMELAND
SECURITY,**

      **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is detained under an order of removal entered by the immigration court in Kansas City, Missouri. Petitioner seeks immediate release from custody, asserting that his continued detention pending removal has exceeded the six-month period considered presumptively reasonable. The Court found that Petitioner's allegation that there is no significant likelihood of removal in the reasonably foreseeable future was sufficient to shift the burden to Respondent to rebut this showing. (Doc. 7.) The Court subsequently appointed counsel for Petitioner (Doc. 14) and the matter has been fully briefed. *See* Docs. 9, 10, 12, 17, 18, and 19.

**I. Background**

On or about August 3, 2001, Petitioner, a native and citizen of Kenya, entered the United States in Cleveland, Ohio, with an F-1 Student Visa. On December 10, 2015, the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") issued a Notice to Appear, charging Petitioner with removability under INA § 237(a)(1)(C)(i)[1] due to violation of his student visa on the grounds:  (1) Petitioner did not attend Wichita State

---

[1] 8 U.S.C. § 1227(a)(1)(C)(i).

1

University from May 2003 to July 18, 2006; (2) Petitioner enrolled at Butler County Community College in August 2004 without proper authorization from DHS; and (3) Petitioner accepted employment for wages or other compensation without authorization from DHS. (Doc. 4–1, at 4.) On the same day, Petitioner was served a copy of the Notice to Appear and was issued a $10,000 bond by ICE. Petitioner was first taken into custody on December 10, 2015, and has remained in custody since that date.

On February 11, 2016, an immigration judge ordered Petitioner removed to Kenya. On February 26, 2016, Petitioner filed an appeal from the removal order. On May 13, 2016, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal and the removal order became final.

Kenya requires a travel document for anyone being removed who is not in possession of a valid passport. (Doc. 4–1, at 6.) Because Petitioner's passport is expired, Deportation Officer Katy Casselle ("Casselle") sent a travel document request via UPS to the Kenya Consulate in Los Angeles, California (the "Consulate"), on June 22, 2016. Casselle sent emails to the Consulate on July 14, July 27 and August 2, 2016, to inquire about the status of the travel document request. The emails were returned as undeliverable, due to the Consulate's inbox being full. Casselle also left voicemails with the Consulate on July 27 and August 2, 2016, to inquire about the status of the travel document request; but she did not receive a call back. On August 2, 2016, Casselle requested assistance from ICE Headquarters to obtain a travel document for Petitioner by emailing Robert Tremont, who is the Point of Contact for cases

involving Kenyan nationals ("Tremont"). Tremont relayed that the Consulate is still reviewing the travel request.[2]

On August 4, 2016, Casselle completed the Post Order Custody Review Worksheet ("POCRW") and recommended that Petitioner continue to remain in ICE custody based on the pending request for a Kenya travel document. (Doc. 3, at 7–14.) The POCRW provides that Petitioner does not appear to meet any of the criteria of 8 CFR § 241.14 for continued detention. On August 9, 2016, the Enforcement and Removal Office ("ERO") issued a "Decision to Continue Detention," finding that "ICE has submitted an application for a travel document to the Kenya Embassy. ICE expects that the Embassy will issue the travel document in the near future." (Doc. 5–1, at 1.) Petitioner was served with a copy of the decision to continue his detention on the same day.

On November 2, 2016, Casselle completed the Transfer Checklist for the 180-day Post Order Custody Review ("POCR"), and transferred the checklist to ICE Enforcement and Removal Office Headquarters Removal and International Operations ("ICE/ERO HQ RIO"). A Decision to Continue Detention, dated November 8, 2016, was entered by ICE/ERO HQ RIO, and the decision was served on Petitioner on November 16, 2016. (Doc. 5–1, at 2.) Petitioner

---

[2] Although Casselle has provided five declarations in this case, she mentions for the first time in her declaration signed on 3/23/17, that there was additional correspondence with Tremont. *See* Doc. 4–1 (declaration signed on 12/16/16); Doc. 9–1 (declaration signed on 2/16/17); Doc. 12–1 (declaration signed on 2/21/17); Doc. 18–2 (declaration signed on 3/21/17); and Doc. 18–1 (declaration signed on 3/23/17). Casselle states in the 3/23/17 declaration that on August 3, 2016, Tremont stated that he had met with the Embassy, and that they were looking into this case; on August 10, 2016, Tremont notified Casselle that he had a meeting scheduled with the Embassy the previous day, but the Embassy cancelled the meeting before it took place; on October 11, 2016, Casselle emailed Tremont to ask if there were any updates on the pending travel document request; on October 13, 2016, Tremont notified Casselle that he had emailed the Embassy, quoting the International Convention on Civil Aviation, and encouraging issuance of the travel document; on October 25, 2016, the Embassy notified Tremont that they had sent for verification in their immigration office in Nairobi; and on December 29, 2016, Casselle emailed Tremont to ask if there were any updates and Tremont notified her that the issuing official was in Nairobi until February. (Doc. 18–1, at 7–8.)

filed this petition for writ of habeas corpus on November 17, 2016.[3]

On January 18, 2017, the Court entered a Memorandum and Order (Doc. 7), finding that Petitioner's allegation that there is no significant likelihood of removal in the reasonably foreseeable future was sufficient to shift the burden to Respondent to rebut this showing. The Court ordered Respondent to provide a sufficient rebuttal within thirty days, finding that absent such a showing, the petition for writ of habeas corpus would be granted.

On February 1, 2017, Casselle completed the Transfer Checklist for the 270-day POCR review, and transferred the checklist to ICE/ERO HQ RIO. (Doc. 9–1, at 8.) Also on that date, Casselle spoke by phone with Evelyn[4] at the Consulate ("Consul Makhanu"). *Id.* Consul Makhanu stated that an application for Emergency Certificate was needed, with Petitioner's signature. *Id.* Casselle faxed the application to Petitioner, with instructions to sign the application and fax it back to Casselle. *Id.* Casselle spoke with Petitioner on the phone and he stated that he did not want to sign anything without first speaking with his Consulate. *Id.* Casselle provided Petitioner with the phone number for his Consulate, and instructed Petitioner to fax the application back to her when it was completed. *Id.* Casselle notified Petitioner that this request was a requirement for his travel document application, and if he refused to sign the application, he was failing to comply. *Id.*

On February 6, 2017, Casselle spoke with Petitioner on the phone and he stated again that he did not want to sign anything without first speaking to his Consulate. Casselle reminded him that the request was a requirement for his travel documents and his refusal to sign constituted

---

[3] Petitioner previously filed a habeas petition in this Court (*Anyimu v. DHS*, No. 16-3131-JWL). Because that case was filed within four months of Petitioner's final removal order, the Court dismissed the matter on September 7, 2016, finding Petitioner's detention presumptively reasonable.

[4] Petitioner notes that the Kenya Consul's correct name is Everleen Makhanu. *See* http://www.kenyaconsulatela.com/staff.aspx (last visited April 3, 2017).

failure to comply. Casselle also called the Consulate and left a voicemail indicating that Wichita ICE had a detainee in custody who was requesting to speak with the Consulate. A Decision to Continue Detention was entered by ICE/ERO HQ RIO on February 6, 2017, and was personally served on Petitioner on February 9, 2017.

On February 16, 2017, when asked how many times Petitioner had attempted to contact the Consulate since he received the application to sign, Petitioner stated that he had attempted to contact the Consulate once either the previous week or the week before.

The original application presented to Petitioner was inaccurate and only included one page of the five-page application. Casselle sent Petitioner a corrected, complete form on February 21, 2017. Petitioner sought to speak with counsel and the Consulate, and this Court appointed him counsel on February 24, 2017. As soon as counsel was afforded an opportunity to review the case and confer with Petitioner, Petitioner signed the completed application and faxed it back to Casselle on March 8, 2017. Casselle sent the signed document to the Consulate via UPS Overnight.

On March 10, 2017, Casselle spoke by phone with Consul Makhanu at the Consulate, who informed Casselle that the Consulate needed the Emergency Certificate, with an original signature, instead of a faxed copy. On March 13, 2017, Casselle received the document with an original signature and sent it to the Consulate via UPS Overnight. On March 14, 2017, Casselle verified that the Consulate had received the document with the original signature, and a telephonic interview was scheduled for March 15, 2017.

On March 14, 2017, Tremont notified Casselle that the Consulate has been issuing travel documents for other offices, so they would hold off on pursuing the document from the Embassy for now, since the Consulate "has been more involved."

On March 15, 2017, Consul Makhanu interviewed Petitioner by telephone. On March 17, 2017, Casselle spoke with Consul Makhanu, who stated that she may be able to complete and issue the travel document for Petitioner in about two weeks.

## II. Discussion

Petitioner challenges his continued detention beyond the six-month limit considered presumptively reasonable by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court previously held that Petitioner's allegations that DHS had failed to secure travel documents for Petitioner and had not been contacted by the Consulate, were sufficient to show that there is no significant likelihood of removal within the reasonably foreseeable future. The Court noted that "[a]lthough ICE has attempted to contact the Kenya Consulate, there is no evidence that the Consulate has responded to ICE. Petitioner has cooperated fully with the efforts by ICE to remove him during the removal period, by providing identity documents (passport, birth certificate and driver's license) and necessary biographical information, and by complying with all demands by ICE." (Doc. 7, at 5.) The Court noted that "[a]lthough Respondent has set forth ICE's attempts to contact the Kenya Consulate, there is no evidence that the Consulate has actually responded or indicated that it is taking steps to provide Petitioner's travel documents." *Id.* The Court held that Petitioner's allegations were sufficient to shift the burden to Respondent to rebut this showing, and directed Respondent to show that Petitioner's removal in the foreseeable future is likely. *Id.* at 6.

In its Response to the Court's Memorandum and Order, Respondent alleged that Petitioner's refusal to sign documents and cooperate with ICE in his removal justifies his continued detention under 8 U.S.C. § 1231(a)(1)(C). (Doc. 9, at 5.) However, in its Addendum to Response, Respondent acknowledges that it inferred that Petitioner was not cooperating

because "the only information available to Respondent was that Petitioner was refusing to sign the documents because he wanted to talk to the Kenyan Consulate." (Doc. 12, at 1.) Respondent subsequently learned that Petitioner was refusing to sign the document because his date of birth was incorrect in the document, and acknowledged that "the fact that it was incorrect diminishes the willfulness of Petitioner's lack of cooperation in his refusal to sign an incorrect document." *Id.* at 2. Respondent adds that Petitioner still refused to sign the corrected document until he could talk to the Consulate. *Id.*

Petitioner argues that he was presented with a single page from the application on February 1, 2017, which was unexplained, inaccurate, and incomplete. Petitioner was given one page from a five-page application and was asked to sign it stating that "the information given in the application is correct to the best of my knowledge and belief." Petitioner could not declare this as he had only been given one page; there was no heading on the document to inform him of its source, purpose, or legitimacy; it misstated his date of birth; it misstated his address; and it incorrectly stated that he had not "previously held or applied for a passport of any description." *See* Doc. 10, at 7–8.

The Court rejects any argument that Petitioner's continued detention is justified due to his alleged refusal to cooperate with ICE in his removal. His refusal to sign the isolated and inaccurate page of the application was reasonable. Petitioner has cooperated fully with the efforts by ICE to remove him during the removal period, by providing identity documents (passport, birth certificate and driver's license) and necessary biographical information, and by complying with all demands by ICE. *Cf. Aiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (unpublished) (finding that the main reason petitioner remained in the United States was

his repeated court challenges to removal and refusal to cooperate with ICE officials in obtaining a passport and other necessary travel documents).

Respondent also argues that additional follow-ups and contact with the Consulate have been made in an effort to expedite Petitioner's removal. (Doc. 9, at 2.) Respondent points to Casselle's contacts with the Consulate, the Consulate's receipt of the signed Emergency Certificate, Petitioner's interview, and Consul Makhanu's response that she "may be able to complete and issue the travel document for Petitioner in about two weeks." Despite all of the delays in this case, Respondent argues that now there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Respondent asserts that the Consulate has estimated the issuance of travel documents within two weeks of Petitioner's March 15, 2017 interview, and actual deportation would occur within ten to fifteen days after that, or mid-April.

Respondent argues that Petitioner is unlike the aliens in *Zadvydas*, who faced indefinite detention because their countries of origin would not accept them. However, nothing in *Zadvydas* limits relief to those whose receiving countries refuse to accept them. *See, e.g., Younes v. Lynch*, No. 16-13556, 2016 WL 6679830, at *3 (E.D. Mich. Nov. 14, 2016) (finding that the apparent bureaucratic complications prevented a finding that the necessary documents would issue "in the reasonably foreseeable future"); *Drummond v. Lynch*, No. 4:15cv560-RH/CAS, 2016 WL 4154925, at *4 (N.D. Fla. June 27, 2016) (finding that government's claimed anticipation of receiving documents in the reasonably foreseeable future did not satisfy burden of rebutting petitioner's showing that removal was not significantly likely), *report and recommendation adopted by* 2016 WL 4157348 (N.D. Fla. Aug. 4, 2016); *see also Seretse v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.C. Cir. 2002) ("Respondents have not demonstrated to this Court that any travel documents are in hand, nor have they provided any evidence, or even

assurances from the Liberian government, that travel documents will be issued in a matter of days or weeks or even months.") (citing *Okwilagwe v. INS*, No. 3–01–CV–1416–BD, 2002 WL 356758, at *2–3 (N.D. Texas March 1, 2002) (alien detained for eleven months after INS represented that it would have travel documents in a few days; court found that if INS did not have documents in hand, it failed to sustain its burden of showing that alien's removal would occur in the reasonably foreseeable future)).

Petitioner argues in his Surreply filed on March 31, 2017, that it has been more than two weeks since Petitioner's interview with the Consulate and there has been no news of any travel documents arriving and the government has offered no written assurances from anyone at the Consulate or the Kenyan Embassy that any documents are forthcoming. Petitioner asserts that he is well situated for release. He has housing, transportation, a job prospect (if work is authorized), and ample community support. Petitioner states that he will abide by any reporting and other conditions deemed appropriate upon his release from detention. Respondent has not even suggested that Petitioner is a danger to the community, and there is no significant evidence suggesting that Petitioner is a flight risk.

Respondent cites *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002), for the proposition that "[w]hile the American government can be faulted if its bureaucracy causes delay, it cannot be held responsible for the inefficiencies, or worse, of the bureaucracies of other countries." (Doc. 18, at 6–7.) While the Court recognizes that the Consulate has been difficult to reach and unresponsive, the Court cannot say that Respondent's actions did not contribute to the delay in this case. Casselle did not send a travel document request to the Consulate until forty days after Petitioner's removal order became final. The record suggests that Casselle did nothing regarding the request to the Consulate from the time she sent an email and left a

voicemail for the Consulate on August 2, 2016, until she spoke with Consul Makhanu on February 1, 2017. The August 9, 2016 Decision to Continue Detention stated that "ICE expects that the Embassy will issue the travel document in the near future." (Doc. 5 – 1, at 1.) Over eight months later, on March 14, 2017, Tremont notified Casselle that they would hold off on pursuing the document from the Embassy for now, since the Consulate "has been more involved."

The Court previously recognized that as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." Doc. 7, at 5 (citing *Zadvydas*, 533 U.S. at 701). Contrary to Respondent's estimate, the travel documents have not been issued within two weeks of Petitioner's March 15, 2017 interview. Respondent also suggested that actual deportation would occur by mid-April. The Court sets this matter for hearing on April 14, 2017. If Petitioner has not been removed by that date, the Court is inclined to order his immediate release pending his removal. Petitioner's release will be subject to supervision in accordance with 8 U.S.C. § 1231(a)(3), and any other terms and conditions requested by Respondent that the Court deems appropriate.

**IT IS THEREFORE BY THE COURT ORDERED** that this matter is set for hearing on **April 14, 2017, at 1:00 p.m.**, in KC Courtroom 440 before District Judge John W. Lungstrum.

**IT IS SO ORDERED**.

Dated this 5th day of April, 2017, at Kansas City, Kansas.

                                                  s/ John W. Lungstrum
                                                  **JOHN W. LUNGSTRUM**
                                                  **UNITED STATES DISTRICT JUDGE**