IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMWEL OKARI ANYIMU,

    Petitioner,

    v.                                    CASE NO. 16-3232-JWL

DEPARTMENT OF HOMELAND
SECURITY,

    Respondent.

## MEMORANDUM AND ORDER

This matter is a renewed petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is detained under an order of removal entered by the immigration court in Kansas City, Missouri. Petitioner filed his petition on November 17, 2016, seeking immediate release from custody, asserting that his continued detention pending removal exceeded the six-month period considered presumptively reasonable. On April 13, 2017, the Department of Homeland Security ("DHS") agreed to release Petitioner from custody pending removal, and the Court dismissed this action without prejudice. (Docs. 21, 23.) Petitioner was taken back into custody on November 1, 2017. On November 7, 2017, Petitioner filed a Motion to Reopen 28 U.S.C. § 2241 Proceeding and for Immediate Hearing, again seeking his release from custody. The Court granted the motion, held hearings on November 9th and 16th, 2017, and took the matter under advisement. The Court finds that the renewed petition for writ of habeas corpus should be denied.

## I. Factual Background[1]

On April 13, 2017, the Court ordered Petitioner's release from custody, based upon the parties' agreed request. (Doc. 21.) The Order set forth Petitioner's conditions for release. *Id*. Petitioner was in fact released from the Chase County Jail on April 13, 2017 (Doc. 22), and the petition in this case was dismissed without prejudice on April 14, 2017 (Doc. 23).

On September 29, 2017, Deportation Officer Katy Casselle ("DO Casselle") received notification that the Kenyan Embassy had issued a travel document for Petitioner, and it was mailed that night to the Wichita ICE Office. (Doc. 26–1, at 1–2, Updated Declaration of Katy Casselle, ¶¶ 3, 4.) On October 16, 2017, a notice to report was sent to Petitioner, requesting that he report to the Wichita ICE Office on November 1, 2017. *Id*. at ¶ 5. Petitioner reported to the ICE Office on November 1, 2017, and was taken into ICE custody. *Id*. at ¶ 6. On November 3, 2017, DO Casselle received an Escort Threat Assessment ("ETA") with supervisor approval for Petitioner to fly without an escort. *Id*. at ¶ 8. The ETA is required as part of the necessary documents to request a flight through the travel coordinator. *Id*. On November 3, 2017, DO Casselle submitted all necessary documents to the travel coordinator in Kansas City, MO, and requested arrangements for Petitioner's removal to Kenya. *Id*. at ¶ 9.

At the Court's evidentiary hearing on November 16, 2017, John Seright, the travel coordinator for ICE's Kansas City Enforcement Removal Operations Office, testified regarding the status of Petitioner's travel arrangements. Deportation officers request travel arrangements from Mr. Seright after they have obtained a travel document (issued by the destination country

---

[1] The Court's previous orders set forth a detailed factual background for this case. *See* Docs. 7, 20. The Court will not repeat those facts, and will set forth only the additional facts occurring after Petitioner's release from custody on April 13, 2017.

2

authority) and an ETA. Mr. Seright then arranges the ticketing and the clearances required to go to the destination country.

Mr. Seright testified that he secured airline tickets for Petitioner to fly from Kansas City, Missouri, to Washington, D.C. Upon his arrival in D.C., officers will meet Petitioner, take him into custody, and escort him to his flight the next day. After an overnight stay in D.C., Petitioner will fly to Addis Ababa, Ethiopia, where he will have a one-hour layover before continuing on a flight to Nairobi, Kenya. Petitioner will arrive at and depart from Terminal 2 in Addis Ababa. Terminal 2 is a transit terminal and Petitioner will not make entry into Addis Ababa, nor will he have contact with Ethiopian authorities there unless he tries to leave the transit terminal.

Respondent submitted Petitioner's travel itinerary as Exhibit 1 for the Court's in camera review. The exhibit establishes that flights from Kansas City to D.C., from D.C. to Addis Ababa, and from Addis Ababa to Nairobi, are secured for dates certain during the week of December 10, 2017.

## II. Discussion

While the government may detain an "inadmissible" or criminal alien beyond the statutory removal period, *see* 8 U.S.C. § 1231(a)(6),[2] the government may not detain such an alien indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Instead, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *Id*. at 701. Beyond that period, if the alien shows

---

[2] 8 U.S.C. § 1231(a)(6) provides that:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order or removal, may be detained beyond the removal period and, if released, shall be subject to terms of supervision in paragraph (3).

that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Petitioner argues that inaccuracies in the travel document render it insufficient to show a significant likelihood of removal in the reasonably foreseeable future. Petitioner points to the issuing officer's statement in the travel document that representations were made to him by Petitioner, even though Petitioner does not recall speaking to him, and the statement that Petitioner's passport is lost, when in fact his expired passport is being held in his file. Mr. Seright testified that the travel document was issued by the Kenyan Embassy and acknowledges that Petitioner is a citizen or national of Kenya who is allowed to enter and remain in Kenya. Mr. Seright stated that the statements, even if inaccurate, are more "informational" and would have no effect on Petitioner's ability to be admitted into Kenya. Mr. Seright testified that there was "zero chance" that Petitioner would be denied entry based on the fact that he would have his expired passport in hand. Mr. Seright testified that the type of inaccuracies in a travel document that could potentially cause problems would be in regard to biographical information affecting a person's citizenship—i.e. a misspelled name, an inaccurate date of birth, the wrong photo, etc. Furthermore, because the airline would be required to return Petitioner to the United States at the airlines' expense if he is refused entry, the airline will be meticulous about reviewing his travel documents upon boarding in D.C. The testimony of Mr. Seright satisfies the Court that the irregularities in the travel document do not render his removal

unlikely or prevent a finding of a significant likelihood of removal in the reasonably foreseeable future.

Petitioner also argues that any regulatory violation by DHS could serve as another basis for Petitioner's release. Petitioner questions who made the decision to take Petitioner back into custody, and whether or not it was done pursuant to the proper process. Petitioner presented no evidence of a violation of applicable regulations. Petitioner cites to 8 C.F.R. § 241.4(l)(2) in his Supplemental Authority, arguing that "[i]t appears unlikely that ICE followed this regulation." (Doc. 29, at 6.) Section 241.4(l)(2) sets forth the authority for revoking release and returning to custody an alien "previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(l)(2). There is no evidence that Petitioner was previously approved for release under that regulation. Petitioner was released on April 13, 2017, by agreement of the parties. Petitioner has not shown that a failure to follow regulations justifies his release.

The initial burden is on Petitioner to show that there is no significant likelihood of removal in the reasonably foreseeable future. Airline tickets have been purchased for Petitioner's removal the week of December 10, 2017. Given the current posture of the case, Petitioner has failed to meet that burden.

Because Petitioner's removal appears imminent, the Court finds that he is not entitled to habeas corpus relief and concludes this matter should be dismissed. However, should Petitioner's removal not occur on or shortly after the week of December 10, 2017, Petitioner should notify the Court immediately.

**IT IS THEREFORE BY THE COURT ORDERED** that Petitioner's renewed petition for habeas corpus is **denied.**

**IT IS SO ORDERED**.

Dated this 17th  day of November, 2017, at Kansas City, Kansas.

                                              **s/ John W. Lungstrum**
                                              **JOHN W. LUNGSTRUM**
                                              **UNITED STATES DISTRICT JUDGE**